FILED
COURT OF APPEALS
DIVISION II

2013 NOV 19 AM 8:37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SHAWN D. FRANCIS, | No. 42712-5-II |
| Appellant/Cross-Respondent, | PUBLISHED OPINION |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, | |
| Respondent/Cross-Appellant. | |

BJORGEN, J. — Shawn D. Francis, an inmate in the custody of the Washington State Department of Corrections (Department), sued the Department after he discovered that it had failed to provide documents responsive to a Public Records Act (PRA)[1] request he had made while incarcerated at the McNeil Island Corrections Center. The superior court granted summary judgment in Francis's favor on the issue of liability after the Department admitted that it had failed to provide documents responsive to the request. The court awarded Francis a monetary penalty near the low end of the statutory range, based on a determination that the Department acted in bad faith, but denied Francis's costs.

Francis timely appeals the penalty amount and denial of costs, arguing that the trial court abused its discretion in awarding a penalty at the low end of the statutory range.[2] The

---

[1] Ch. 42.56 RCW.

[2] Francis also argued in his opening brief that he was entitled to attorney fees and that the Department's cross-appeal was untimely. In his reply brief, Francis properly concedes that (1) in light of our decision in *West v. Thurston County*, 169 Wn. App. 862, 282 P.3d 1150 (2012), he is not entitled to attorney fees, and (2) because November 11, 2011 was Veteran's Day, the Department's cross-appeal was timely filed.

No. 42712-5-II

Department cross-appeals the trial court's penalty award, arguing that the court erroneously interpreted the bad faith requirement of RCW 42.56.565 and that the court's findings did not support its determination that the Department acted in bad faith.

Because the factors considered by the trial court are relevant to bad faith, and the trial court's findings support both the bad faith determination and the penalty amount, we affirm the trial court's summary judgment and award of the penalty to Francis. Because the PRA's cost-shifting provision is mandatory, we reverse the trial court's denial of Francis's request for costs and remand for an award of the reasonable costs Francis incurred in litigating his claim, both in the trial court and on appeal.

FACTS AND PROCEDURAL HISTORY

On June 19, 2009, Francis sent a letter to Brett Lorentson, a public disclosure specialist with the Department, requesting

> any and all documents related to any reason and/or justification for the reason why inmates at [McNeil] are not allowed to retain fans and hot pots in their cells, as well as any policy that may be in place to substantiate such restrictions on these items.

Clerk's Papers (CP) at 11.[3] Lorentson sent Francis a letter promising to identify and gather responsive records and respond on or before July 30, 2009.

On July 10 Lorentson provided Francis with 15 pages of documents via e-mail, stating that "[s]ince all responsive records have been provided, this request is closed." CP at 115. The documents consisted of the Department's policy 440.000 with attachments. According to this

---

[3] Francis alleged below that the McNeil staff who denied him the use of these items, which he had previously purchased through the Department, cited a policy that they refused to produce and that Francis could not find in the prison library.

2

policy, inmates at McNeil and other minimum- or medium-security facilities were permitted a fan and, "as authorized by facility," a hot pot. CP at 31-32. None of the documents provided related to any prohibition against fans or hot pots.

In November 2009, however, another inmate showed Francis documents concerning McNeil's policy prohibiting fans and hot pots. Francis subsequently filed suit in Pierce County Superior Court, alleging a violation of the PRA and requesting statutory penalties. Over the course of the litigation, the Department provided Francis with additional documents, both through Lorentson and in response to Francis's discovery requests. On February 28, 2011, Francis received a copy of the policy in effect at the time of his request.

On June 7, 2011, Francis moved for summary judgment. The Department conceded that it had violated the PRA, but disputed the penalty amount Francis had proposed. The trial court granted Francis's motion for summary judgment as to liability, reserving judgment as to the penalty amount until a later hearing.

Prior to the hearing on the penalty amount, a new law took effect prohibiting awards of PRA penalties based on record requests made by incarcerated persons, unless the court finds "that the agency acted in bad faith." Former RCW 42.56.565 (2009), *amended by* LAWS OF 2011, ch. 300, §§ 1, 2. The trial court ruled that this restriction applied to Francis's case, found bad faith by the Department, and awarded Francis a penalty. In doing so, the court applied the aggravating and mitigating factors articulated by our Supreme Court for setting the amount of PRA penalties in *Yousoufian* V, 168 Wn.2d 444, 466-68, 229 P.3d 735 (2010).

In particular, the trial court relied on a "Public Disclosure Routing Slip" that Francis obtained through discovery. An official at McNeil had signed the routing slip form, which

3

states, "I verify that I have conducted a thorough staff search and I report that I do not have any responsive documents in regards to this request." Br. of Appellant at Ex. A. The form allows the preparer to check boxes indicating which of 17 record storage locations were searched, but no boxes were checked on Francis's form. Besides signing the form, the preparer wrote only the number "15" in a blank space, indicating that all staff at McNeil spent no more than 15 minutes searching for the documents. Br. of Appellant at Ex. A.

Although the trial court found no agency dishonesty, recklessness, or intentional noncompliance, it found that a number of aggravating factors, including the Department's "negligence or gross negligence," supported a determination of bad faith. Report of Proceedings (RP) at 8. However, because the trial court also found a number of mitigating factors present, it imposed a penalty near the low end of the statutory range, adopting the Department's recommendation. The court also denied Francis's request for costs.

Francis timely appeals, asserting that the trial court abused its discretion in awarding a penalty at the low end of the scale despite finding bad faith and in denying Francis costs. The Department cross-appeals, arguing that the trial court erred in finding bad faith.

ANALYSIS

The Department raises arguments in its cross-appeal that, if correct, preclude any penalty award to Francis. We therefore first address the Department's cross-appeal, then turn to the issues raised in Francis's appeal.

I. The Department's Cross Appeal

The Department contends that under RCW 42.56.565(1) a determination of bad faith requires that the agency have committed some intentional, wrongful act. The Department also asserts that the trial court erred because it erroneously applied the aggravating and mitigating factors articulated by our Supreme Court in *Yousoufian* V, 168 Wn.2d at 466-68, which factors "were designed for the sole purpose of determining the amount of penalties under the PRA," not for the purpose of finding bad faith sufficient to entitle an incarcerated person an award of penalties under the PRA. Br. of Resp't at 12 (emphasis omitted). We hold that under the rules of statutory construction and the case law (1) a determination of bad faith under RCW 42.56.565(1) does not require commission of some intentional, wrongful act, and (2) the trial court's determination that the Department acted in bad faith was correct without regard to the *Yousoufian* V factors. We therefore affirm the trial court's bad faith determination and its award of a penalty.

II. Standard of Review

The Department does not challenge the trial court's grant of summary judgment on the issue of whether a PRA violation occurred. We thus limit our review to the trial court's award of a statutory penalty and the underlying bad faith determination. RAP 2.4(a). Whether an agency acted in bad faith under the PRA presents a mixed question of law and fact, in that it requires the application of legal precepts (the definition of "bad faith") to factual circumstances (the details of the PRA violation). *See Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 469, 938 P.2d 827 (1997) (noting that "[w]hether a party has failed to negotiate in good faith, although

involving a substantial factual component, is a mixed question of law and fact."); *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993).

Where an appellant does not assign error to a trial court's factual findings, we consider those findings verities. *Yousoufian V*, 168 Wn.2d at 450 (citing *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980)). Here, the Department assigns error only to the trial court's determination that the agency acted in bad faith, not to any of the underlying findings on which the court below based that determination. Thus, we accept as true the facts on which the trial court relied in finding bad faith, but we review de novo the trial court's conclusion that those facts establish bad faith.

Finally, when findings of fact are not clearly articulated and distinguished from conclusions of law, we exercise discretion in determining what facts the trial court actually found. *Tapper*, 122 Wn.2d at 406 (citing *Kunkel v. Meridian Oil, Inc.*, 114 Wn.2d 896, 903, 792 P.2d 1254 (1990)). To supplement a trial court's written findings of fact, we may look to consistent language in the trial court's oral opinion. *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 171, 473 P.2d 193 (1970) (citing *Vacca v. Steer, Inc.*, 73 Wn.2d 892, 441 P.2d 523 (1968)).

III. THE BAD FAITH REQUIREMENT FOR PRA AWARDS TO INCARCERATED PERSONS

RCW 42.56.565(1) mandates that

> [a] court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record.

The PRA does not include a definition of "bad faith," and we know of no court that has yet interpreted the meaning of the bad faith requirement in the context of penalty awards based on PRA requests by incarcerated persons.

The trial court's written order states only that it "determined bad faith by applying the sixteen *Yousoufian* V mitigating and aggravating factors to the facts of this case." CP at 188-89. The court's oral ruling, however, makes clear that it looked at those factors only as "guidance in determining what bad faith actually is." RP at 4. The trial court found a number of facts that tend to support a finding of bad faith, specifically (1) delayed response by the agency; (2) lack of strict compliance with PRA procedural requirements; (3) lack of proper training and supervision; (4) "negligence or gross negligence"; and (5) sufficient clarity in Francis's request. RP at 5-8. The court also described the McNeil records request routing slip as "almost a rubber-stamp situation where you put in 15 minutes, don't tell anybody what you looked at or looked for and then send the routing slip on." RP at 6. Despite these findings, the trial court explicitly found no "recklessness or intentional noncompliance," no "intentional hiding or misrepresentation," and no "deceit" on the part of the Department. RP at 6, 7, 9.

In support of its argument that a determination of "bad faith" under RCW 42.56.565(1) requires an intentional, wrongful act, the Department directs our attention to three sources of authority: (1) precedents discussing bad faith as a factor in determining the amount of PRA penalties; (2) Washington cases discussing bad faith in other contexts; and (3) federal cases discussing bad faith in the context of the Federal Freedom of Information Act (FOIA). We consider each in turn.

7

No. 42712-5-II

a.      PRA Cases Addressing Bad Faith

The Department asserts that precedents addressing PRA penalty amounts hold that an

agency acts in bad faith only when it knows that it has responsive records but intentionally fails

to disclose them, citing *Yousoufian v. King County Exec.* (*Yousoufian* I), 114 Wn. App. 836, 853,

60 P.3d 667 (2003), *rev'd on other grounds*, 152 Wn.2d 421, 98 P.3d 463 (2004) (*Yousoufian* II);

*King County v. Sheehan*, 114 Wn. App. 325, 356-57, 57 P.3d 307 (2002). These precedents do

not support the Department's assertion.

Although it distinguished cases where "the government agency knew it had responsive

records that should have been disclosed, but purposely failed to disclose them," the *Yousoufian* I

court explicitly agreed with the trial court that King County's response to Yousoufian's request

was "not a good faith effort." *Yousoufian* I, 114 Wn. App. at 853. It then reversed the award

and remanded with instructions to determine an appropriate penalty above the statutory

minimum, stating that the minimum penalty "should be reserved for instances of less egregious

agency conduct, such as those instances in which the agency has *acted in good faith*."

*Yousoufian* I, 114 Wn. App. at 854 (emphasis added). Thus, contrary to the Department's

reading of the case, the *Yousoufian* I court considered the County to have acted in "bad faith," or

at least shown a lack of good faith,[4] even though it found no intentional misconduct. *Sheehan*,

114 Wn. App. at 356-57, held that the County's refusal to disclose the full names of all its police

officers violated the PRA, but did not involve bad faith. In finding an absence of bad faith, the

court noted the County's motivation to protect the safety and privacy of its officers and that its

---

[4] Whether a lack of good faith equates to bad faith presents an interesting question, one which we
need not consider here.

8

arguments were "not so farfetched as to constitute bad faith." *Sheehan*, 114 Wn. App. at 356-57. The court also contrasted the facts of its case with those in *American Civil Liberties Union v. Blaine School District No. 503*, 95 Wn. App. 106, 111-15, 975 P.2d 536 (1999), where "it was clear that the agency did not act in good faith" because the school district's refusal to disclose the requested records was motivated by a desire "to avoid the cost and inconvenience of complying." *Sheehan*, 114 Wn. App. at 356 (citing *Blaine Sch. Dist. No. 503*, 95 Wn. App. at 111-15).

*Sheehan*'s citation to *Blaine* does not imply a ruling that only the intentional refusal to disclose known responsive records can constitute bad faith. Rather, *Blaine* simply strengthened *Sheehan*'s holding by showing that the obvious bad faith in *Blaine* was not in play in *Sheehan*. In fact, *Sheehan*'s reliance on the motivation of the County and the plausibility of its arguments directly shows its view that bad faith may be present, even though the intentional wrongdoing of *Blaine* is not. Thus, *Sheehan* tends to undermine the Department's argument rather than support it.

b.      Other Washington Cases Addressing Bad Faith

The Department next cites cases involving equitable awards of attorney fees and a case involving a will contest to support its position that a finding of bad faith here should require proof of an intentional, wrongful act. A court may make an equitable fee award based on "[s]ubstantive bad faith," the Department points out, only when "a party intentionally brings a frivolous claim, counterclaim, or defense with improper motive." *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 929, 982 P.2d 131 (1999). Similarly, we have held that contesting a will in bad faith involves "'actual or constructive fraud' or a 'neglect or refusal to fulfill some duty . . . not prompted by an honest mistake as to one's rights or duties, but by some

9

interested or sinister motive.'" *In re Estate of Mumby*, 97 Wn. App. 385, 394, 982 P.2d 1219 (1999) (quoting *Bentzen v. Demmons*, 68 Wn. App. 339, 349 n.8, 842 P.2d 1015 (1993)).

The Department's argument from these cases has a number of flaws. First, it omits certain portions of these precedents that tend to erode its argument. Notably, the Department omits reference to the discussion of other types of bad faith in *Rogerson*. *See Rogerson*, 96 Wn. App. at 928. In the equitable fee award context, procedural bad faith may also involve "obstinate conduct that necessitates legal action to enforce a clearly valid claim or right" or "vexatious conduct during the litigation." *Union Elevator & Warehouse Co., Inc. v. State ex rel. Dep't of Transp.*, 152 Wn. App. 199, 211, 215 P.3d 257 (2009). Here, the trial court's findings suggest that the Department engaged in "obstinate conduct," specifically, refusing to conduct a reasonable search despite a legitimate request, which required Francis to sue to obtain the records.

Second, under the characterization of bad faith set out above from *Mumby*, the will contest case the Department cites, the trial court's findings here appear to support its determination that the Department acted in bad faith. That is, the trial court's findings support the inference that the Department neglected to fulfill its duty to conduct a reasonable search because of its own interest in avoiding expense and inconvenience. *See Mumby*, 97 Wn. App. at 394.

Finally, Washington precedent allows a broader conception of bad faith in other contexts, recognizing a distinction between "intentional misconduct" and "bad faith." *See In re Marriage of James*, 79 Wn. App. 436, 441, 903 P.2d 470 (1995) (noting that "the trial court must first make a specific finding that the parent has acted in bad faith *or* committed intentional

10

No. 42712-5-II

misconduct") (emphasis added). Furthermore, over a century ago, our Supreme Court, in interpreting a statute governing the certification of a statement of facts on appeal, recognized that gross negligence could rise to the level of bad faith:

> The statement should be stricken in the first instance only where it is manifest that the party proposing it has been guilty of *bad faith or such gross negligence as will amount to bad faith:* [t]he remedy should not be invoked where there has been an attempt in good faith to comply with the statute.

*State v. Steiner*, 51 Wash. 239, 240-41, 98 Pac. 609 (1908) (emphasis added).

Francis directs our attention to the discussion of bad faith that appears in *Black's Law Dictionary*, excerpted from a comment to the *Restatement (Second) of Contracts*. The comment illustrates the difficulties that defining bad faith poses, but establishes that, at least in a contractual relationship, demonstrating bad faith does not require evidence of an intentional, wrongful act:

> *Good faith performance.* Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: *bad faith* may be overt or *may consist of inaction*, and fair dealing may require more than honesty. *A complete catalogue of types of bad faith is impossible, but the following types . . . have been recognized in judicial decisions*: evasion of the spirit of the bargain, *lack of diligence and slacking off*, willful rendering of imperfect performance, [etc.].

RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d (emphasis added) (quoted in part in BLACK'S LAW DICTIONARY 159 (9th ed. 2009)). Thus, at least where a party owes some duty analogous to a contractual obligation, negligence or gross negligence suffices to support a finding of bad faith. The cumulative message of these precedents is that in multiple areas outside of the PRA, bad faith does not require a showing of intentional wrongful conduct.

11

c.     FOIA Cases Addressing Bad Faith

Finally, the Department invites us to look to federal FOIA cases in interpreting the bad faith provision in RCW 42.56.565(1). The Department argues that, under FOIA, an agency's delay in providing records does not indicate an absence of good faith and that subsequent production does not prove that an agency's initial search was unreasonable or conducted in bad faith. For several reasons, this argument does not persuade.

Most importantly, Washington courts do not consider FOIA cases in interpreting PRA provisions that do not correspond to analogous FOIA provisions. *Kleven v. City of Des Moines*, 111 Wn. App. 284, 291, 44 P.3d 887 (2002). For example, our Supreme Court declined to consider FOIA cases in assessing attorney fee awards under the PRA because FOIA's attorney fee provision is discretionary while the PRA's provision is mandatory. *Amren v. City of Kalama*, 131 Wn.2d 25, 35, 929 P.2d 389 (1997). Unlike the PRA, the FOIA does not have a bad faith requirement for awarding penalties to incarcerated requestors: in fact, FOIA does not have a statutory penalty provision. *Neighborhood Alliance v. Spokane County*, 172 Wn.2d 702, 717, 261 P.3d 119 (2011). Thus FOIA cases have no bearing on the meaning of bad faith in this appeal.

Were we to consider FOIA cases relevant to the analysis, however, the cases cited in its brief do not support the Department's argument. First, the Department points out that federal courts presume agencies act in good faith until evidence of bad faith overcomes the presumption. Br. of Resp't at 14 (citing *United States Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991)). While correct, the assertion does not affect the present appeal because the trial court clearly placed the burden of establishing bad faith on Francis.

The Department further relies on a FOIA case to assert that "delay in the production of documents, even after the litigation commenced, 'cannot be said to indicate an absence of good faith.'" Br. of Resp't at 14 (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 355 (1978)). The brief selectively quotes the authority, however, in a way that obscures the intended meaning. The opinion actually holds that "the [agency's] delay *alone* cannot be said to indicate an absence of good faith." *Goland*, 607 F.2d at 355 (emphasis added). In no manner does this prohibit basing a finding of bad faith on delay, along with other evidence. To the contrary, *Goland*'s holding treats delay as a proper consideration in assessing bad faith.

Similarly, the fact that subsequent production of responsive documents does not *prove* the initial search unreasonable or in bad faith does not establish that subsequent production has no bearing at all on whether an agency performed a good-faith search. Thus, to the extent FOIA precedents have any relevance here, they indicate that the Department's delay in disclosing plainly responsive documents in its possession supports the trial court's determination of bad faith.

Contrary to the Department's assertions, the discussions of bad faith in cases considering the amount of PRA penalties, in cases from other areas of Washington law, and in federal FOIA cases, do not establish that a finding of bad faith under RCW 42.56.565(1) requires evidence of an intentional, wrongful act. If anything, these cases suggest that actions short of intentional wrongdoing in performing a record search may establish bad faith.

13

IV. STATUTORY INTERPRETATION OF THE PRA'S BAD FAITH REQUIREMENT

In the absence of a statutory definition or controlling case law, we turn to principles of statutory construction to determine the contours of bad faith in RCW 42.56.565(1). In interpreting a statute, we try to determine and give effect to the legislature's intent. *State v. Budik*, 173 Wn.2d 727, 733, 272 P.3d 816 (2012) (citing *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). First, we consider the statute's plain meaning by looking at the text of the provision at issue, as well as "'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Ervin*, 169 Wn.2d at 820 (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). If a provision nonetheless remains susceptible to two or more reasonable interpretations, it is ambiguous; and we then consider "'the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent.'" *Budik*, 173 Wn.2d at 733 (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

As our discussion above demonstrates, the plain meaning of the words used by the legislature does not tell us whether a court must find an intentional, wrongful act on the part of the agency in order to find bad faith under RCW 42.56.565(1). We must therefore look elsewhere to ascertain the legislative intent.

At first glance, the intent of the legislature that imposed the bad faith requirement for PRA awards to incarcerated requestors might seem clear from the title of the bill: "AN ACT Relating to making requests by or on behalf of an inmate under the public records act ineligible for penalties." LAWS OF 2011, ch. 300, SUBSTITUTE S.B. 5025, 62nd Leg., Reg. Sess. (Wash.

14

2011). Yet the fact that the law nonetheless provides for penalties on a finding of bad faith shows that it did not make inmates ineligible for penalties under all circumstances.

The legislative history illuminates the reason for this approach. As originally introduced, the bill precluded all penalty awards based on requests from or on behalf of incarcerated persons. S.B. 5025, 62nd Leg., Reg. Sess. (Wash. 2011). Public testimony on the bill, however, included concerns that the "bill would effectively end all public records requests by prisoners because an agency will face no penalties for not complying." S.B. REP. on SB 5025, 62nd Leg., Reg. Sess. (Wash. 2011). The bill that ultimately passed reflected these concerns by allowing penalties for bad faith actions by agencies. SUBSTITUTE S.B. 5025, 62nd Leg., Reg. Sess., ch. 300 (Wash. 2011). Thus, the legislature plainly intended to afford prisoners an effective records search, while insulating agencies from penalties as long as they did not act in bad faith.

In construing the PRA, we must "look at the Act in its entirety in order to enforce the law's overall purpose." *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 536, 199 P.3d 393 (2009). We must consider, then, the legislative intent behind the PRA penalty scheme and the Act as a whole.

Our Supreme Court has described the PRA as a "'strongly worded mandate for broad disclosure of public records.'" *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011) (quoting *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007)) (internal quotations omitted). "The purpose of the PRA is to 'ensure the sovereignty of the people and the accountability of the governmental agencies that serve them' by providing full access to information concerning the conduct of government." *Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 118, 231 P.3d 219 (2010) (quoting *Amren*

*v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997)). The purpose of the penalty scheme is to "discourage improper denial of access to public records and [promote] adherence to the goals and procedures" of the statute. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 140, 580 P.2d 246 (1978). The PRA "shall be liberally construed and its exemptions narrowly construed to promote this public policy" and to protect the public interest. RCW 42.56.030; *City of Federal Way v. Koenig*, 167 Wn.2d 341, 344-45, 217 P.3d 1172 (2009).

The strict interpretation of the bad faith requirement urged by the Department runs contrary to these policies and to the intent of the legislature that added the bad faith exception to the proposed ban on penalty awards to incarcerated requestors. As many scholars and jurists have observed, it is notoriously difficult to prove agency intent, particularly from inside a prison cell. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 841, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (noting in the Eighth Amendment context that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity"); BRITTANY GLIDDEN, *Necessary Suffering?: Weighing Government and Prisoner Interests in Determining What Is Cruel and Unusual*, 49 AM. CRIM. L. REV. 1815, 1835-37 (2012) (discussing various sources). Were we to accept the Department's interpretation, agencies could safely respond to record requests from incarcerated persons with cursory or superficial searches, knowing that inmates would find it difficult to determine whether records were overlooked and all but impossible to produce admissible evidence of wrongful intent. This runs directly counter to the legislative intent to provide prisoners a reasonable and effective records search, discussed above.

Furthermore, such a narrow reading is not necessary to prevent abuse of the PRA by incarcerated persons. Where an agency has proper procedures in place, it may avoid penalties

16

under the PRA by simply following them in a reasonable manner. In addition, the PRA already allows agencies to obtain expedited injunctions against attempts by prisoners to abuse it. RCW 42.56.565(2).

Finally, we must liberally construe the PRA to effect its purposes. The PRA provides that

> [t]he people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected.

RCW 42.56.030.

The legislative history of RCW 42.56.565(1), its statutory context, and the purposes of the PRA and this particular provision require a broader reading of the term "bad faith" than the Department proposes. To be more consistent with these sources of authority, we hold that failure to conduct a reasonable search for requested records also supports a finding of "bad faith" for purposes of awarding PRA penalties to incarcerated requestors. This standard does not make an agency liable for penalties to incarcerated persons simply for making a mistake in a record search or for following a legal position that was subsequently reversed. In addition to other species of bad faith, an agency will be liable, though, if it fails to carry out a record search consistently with its proper policies and within the broad canopy of reasonableness.

## V. THE DEPARTMENT'S BAD FAITH IN RESPONDING TO FRANCIS'S PRA REQUEST

The Department argues that the trial court erred by applying the aggravating and mitigating factors our Supreme Court articulated in *Yousoufian* V to the question of bad faith. The Department notes that the *Yousoufian* V court laid out those factors for the "sole purpose of determining the *amount*" of PRA penalties, and that many of the factors "encompass concepts well beyond the historical definition of 'bad faith.'" Br. of Resp't at 12.

We may affirm the trial court on any grounds supported by the record. *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003). Because the record in this appeal clearly discloses a cursory search and delayed disclosure well short of even a generous reading of what is reasonable under the PRA, we do not decide whether the *Yousoufian* V factors apply to the determination of bad faith in this context.

In support of its conclusion that the Department acted in bad faith, the trial court specifically found (1) a delayed response by the Department, even after Francis filed suit; (2) lack of compliance with PRA procedural requirements; (3) lack of proper training and supervision; (4) "negligence or gross negligence"; and (5) sufficient clarity in Francis's request. RP at 5-8. All of these are logically relevant to the reasonableness of the Department's actions and its bad faith.[5]

The evidence before the trial court showed that McNeil staff spent no more than 15 minutes considering Francis's request and did not check any of the usual record storage locations. Absent any countervailing evidence showing justification, this evidence shows that

---

[5] See *State v. Ortiz*, 119 Wn.2d 294, 302, 831 P.2d 1060 (1992) on relevance of compliance with procedures to question of good faith.

the Department did not act in good faith.[6]  Furthermore, the title of one of the documents ultimately produced by the Department, "Personal Property for Offenders," by itself establishes the document's likely relevance to Francis's request, which was reasonable and specific. Nonetheless, the Department instead sent Francis documents plainly not responsive to his request.[7]  Furthermore, the Department did not produce the relevant policy until eight months after Francis filed suit.  On these facts, the court below did not err in finding bad faith.

The trial court's unchallenged findings of fact are verities on appeal and, alternatively, are based on substantial evidence in the record.  These findings support the conclusion that the Department acted in bad faith.  We therefore affirm the trial court's ruling that Francis is entitled to a penalty award based on this bad faith.

## VI. FRANCIS'S APPEAL

Francis argues that the trial court erred in awarding a penalty near the bottom of the statutory range and in denying his request for costs.  Because the PRA grants considerable discretion to trial courts in setting penalty awards, the court below properly considered the relevant factors set forth by our Supreme Court, and the amount is reasonable under the circumstances, we affirm the trial court's penalty award.  Because the PRA cost-shifting provision is mandatory, however, we remand with instructions to award Francis the reasonable costs he incurred in litigating this matter.

---

[6] We do not hold that 15 minutes or any other specific length of a records search conclusively shows an absence of good faith.

[7] Francis had requested documents concerning the *prohibition* against fans and hot pots, but the Department initially provided a copy of a policy *permitting* the disputed items.

a.    The Trial Court's Discretion To Set the Penalty Amount

We review a trial court's determination of PRA penalty amounts for abuse of discretion. *Yousoufian* V, 168 Wn.2d at 458. Under this standard, we will reverse only if the trial court's "decision is manifestly unreasonable or based on untenable grounds or reasons." *Yousoufian* V, 168 Wn.2d at 458 (citing *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). A court acts on untenable grounds if the record does not support its factual findings, and it acts for untenable reasons if it uses "an incorrect standard, or the facts do not meet the requirements of the correct standard." *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). A trial "court's decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take." *Yousoufian* V, 168 Wn.2d at 458-59 (quoting *Mayer*, 156 Wn.2d at 684) (internal quotation marks omitted).

While "bad faith is the principal factor" a trial court must consider in setting PRA awards,

> a simple emphasis on the presence or absence of the agency's bad faith does little more than to suggest what the two poles are on the penalty range and is inadequate to guide the trial court's discretion in locating violations that call for a penalty somewhere in the middle of the [statutory] range.

*Yousoufian* V, 168 Wn.2d at 460, 461 n.7 (quoting *Yousoufian v. Office of Ron Sims*, 137 Wn. App. 69, 78-79, 151 P.3d 243 (2007)) (*Yousoufian* III) (internal quotation marks omitted). Trial courts must also consider the importance of the information to the public at large, whether the violation caused foreseeable economic loss to the requestor, and deterrence of future agency misconduct. *Yousoufian* V, 168 Wn.2d at 461-63.

20

Here, the trial court expressly considered all 16 *Yousoufian* V factors, including the Department's degree of culpability, the public importance and time sensitivity of the matter, any economic loss to Francis, and the amount necessary to deter future violations. The trial court found (1) "no recklessness or intentional noncompliance" on the part of the Department; (2) that the matter was not especially time-sensitive or of great public importance, but of interest to only a restricted class of incarcerated persons; (3) that Francis sustained no actual personal economic loss; and (4) that "the penalty amount is sufficient to put [the Department] on notice that this kind of delay is not acceptable." RP at 5, 7, 9. Although near the bottom of the range, the penalty imposed was more than the statutory minimum.

Because it applied the correct legal standard, the trial court did not act for untenable reasons. Because evidence before it supported the findings of facts, and the findings properly supported the penalty determination, the court did not act on untenable grounds. With the court's findings and the evidence to support them, a reasonable person could conclude that a $4,495 penalty satisfies the requirements of the PRA and is consistent with the *Yousoufian* V factors. We hold that the trial court did not abuse its discretion, and we affirm the penalty amount.

b.      The Trial Court's Refusal To Award Francis Costs

We review PRA cost awards under the same abuse of discretion standard discussed above. *Kitsap County Prosecuting Attorney's Guild*, 156 Wn. App. at 120. The PRA contains a broadly worded, mandatory cost-shifting provision:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time *shall be awarded* all costs . . . incurred in connection with such legal action.

21

RCW 42.56.550(4) (emphasis added). A party prevails if "the records should have been immediately disclosed on request." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 103, 117 P.3d 1117 (2005).

Here, neither party disputes that the Department should have disclosed the records to Francis, but the trial court still denied Francis's request for costs. The trial court explained its reasoning only by stating, "I should add a footnote that, based on the award that I'm giving, I'm not going to include costs in that." RP at 11. However, the amount of the penalty has no bearing on a prevailing party's right to costs. *See* RCW 42.56.550(4) ("*In addition* [to all costs], it shall be within the discretion of the court to award such person" statutory penalties.) (emphasis added).

The Department directs our attention to a case where we held that a trial court did not abuse its discretion in limiting an inmate's costs to clerk's fees and postage because the trial court found that the inmate had used the PRA "as a vehicle [for] personal profit through false, inaccurate, [and] inflated costs." Br. of Resp't at 20 (citing *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 830, 225 P.3d 280 (2009)). That case is inapposite because the trial court here expressly found Francis's request "legitimate," did not discuss the reasonableness of any specific amounts, and denied Francis's request entirely rather than merely limiting it.

The Department also argues that Francis is not entitled to costs because he did not submit a cost bill to the trial court. According to CR 54(d),

> [i]f the party to whom costs are awarded does not file a cost bill or an affidavit detailing disbursements within 10 days after the entry of the judgment, the clerk shall tax costs and disbursements pursuant to CR 78(e).

22

CR 78(e), in turn, only allows limited types of costs if "the party to whom costs are awarded" fails to file a cost bill within the same 10-day period. As just noted, the trial court did not award costs to Francis. Therefore, neither of these provisions applies to him at this point. Further, we have held that "[a]bsent clear language to the contrary, we will not mechanically apply CR 78(e) to deprive a litigant of costs to which he is justly entitled." *Mitchell*, 153 Wn. App. at 823.

Francis was entitled to an award of costs under RCW 42.56.550(4), and he was under no duty to file a cost bill when the court denied him costs. We therefore reverse the denial of costs and remand with instructions to award Francis his reasonable costs incurred in litigating this matter.

c.    Costs on Appeal

Francis also requests costs on appeal. A PRA penalty award in the trial court supports an award of costs or attorney fees on appeal. *See Yousoufian* V, 168 Wn.2d at 470. Francis has complied with the procedural requirements of RAP 18.1 and prevails on his claim that he was entitled to costs below. We therefore award Francis the reasonable costs he incurred in this appeal.

VII. SUMMARY OF HOLDINGS

We affirm the trial court's rulings on summary judgment that the Department acted in bad faith and that Francis is entitled to a penalty award under the PRA. We hold that the trial court did not abuse its discretion in setting the amount of the penalty award and uphold that amount. We reverse the trial court's denial of costs to Francis and remand with instructions to award him reasonable costs incurred in litigating this matter. Finally, we award Francis the

No. 42712-5-II

reasonable costs he incurred in this appeal.

_BJORGEN, J._

We concur:

_HUNT, P.J._

_PENOYAR, J._

24