IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CLARENCE J. FAULKNER, | ) | |
| | ) | No. 33180-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON DEPARTMENT OF | ) | UNPUBLISHED OPINION |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — State prisoner Clarence Faulkner seeks penalties, attorney fees, and

costs from the Washington State Department of Corrections (DOC) for untimely delivery

of records sought in a public disclosure request. We affirm the trial court's denial of any

recovery. A prisoner must prove bad faith in a Public Records Act claim for a monetary

award. We agree with the trial court that DOC was not unreasonably dilatory and did not

act in bad faith when surrendering the records.

FACTS

On May 9, 2013, DOC transferred prisoner Clarence Faulkner from Coyote Ridge Corrections Center in Connell to the Monroe Correctional Complex in Monroe. DOC policy requires that, when an offender transfers between Washington correctional facilities, DOC will pay to ship only two boxes of the offender's personal property. The prisoner may ship additional boxes at his or her own expense. Excess boxes remain in the sending facility until the offender pays for shipping by a common carrier. Pursuant to the policy, Federal Express conveyed seven boxes from the Coyote Ridge Corrections Center to the Monroe Corrections Center on behalf of Faulkner, and Faulkner obtained a copy of the FedEx invoice for this transfer through a public records request directed to DOC.

On December 9, 2013, DOC transferred Clarence Faulkner again between two prisons, this time from the Monroe Correctional Complex to the Stafford Creek Corrections Center in Aberdeen. On February 12, 2014, Faulkner arranged to ship to the Stafford Creek Corrections Center two out of four boxes containing his additional personal property beyond the two boxes sent at DOC expense. The first two of Faulkner's additional boxes arrived on February 13, 2014. On March 12, Faulkner arranged to ship the last of his two boxes, which arrived on March 14. Faulkner paid $85.33 to ship all four boxes. He prepaid $45.00 and later remitted $10.37, $9.96, $9.45, and $10.55.

2

No. 33180-6-III
*Faulkner v. DOC*

In a letter dated March 23, 2014, Clarence Faulkner submitted the public records request to DOC that is the subject of this case. The request listed four categories of records, but only the first category is at issue in this appeal. The first category demanded:

> I am requesting the following records from *DOC's Monroe Correctional Complex.* The records are most likely available from the MCC [Monroe Correctional Complex] Business Office (Ms. Karen Looney) where the payables are batched for payment.
> 1. A copy of the FedEx Invoice for the following shipments: FedEx System # 684667 Acct. # 1253-5111-5.
> Box 1—Shipped 12FEB14 PO: FAULKNER PKG # 005437 70178154 17 LB.
> Box 2—Shipped 12FEB14 PO: FAULKNER PKG # 005437 70178161 20 LB.
> Box 3—Shipped 13MAR14 PO: FAULKNER PKG # 005437 70179106 13 LB.
> Box 4—Shipped 13MAR14 PO: FAULKNER PKG # 005437 70177???? ?? LB.
> Note: Box #4 is 1 of 2 and should closely follow #3 on the invoice. As soon as I can uncover the exact PKG ID# for No. 4 I will provide it to you.
>   . . . .
> REASON FOR REQUEST: Reconcile my prepayments against the actual charges and verify return of over-payments.

Clerk's Papers (CP) at 76. (emphasis added). With his records request, Faulkner included the FedEx invoice he received for his earlier shipment of seven boxes so that DOC would be reminded of the physiognomy of a FedEx invoice.

On April 2, 2014, Jamie Gerken, DOC public disclosure manager, acknowledged receipt of Clarence Faulkner's record request. On April 17, Gerken, by e-mail, asked the Monroe Corrections Complex for copies of the FedEx invoices for the packages listed by Clarence Faulkner. Gerken's request instructed: "Please contact me as soon as possible if

3

I should direct my request for records to others within DOC or if you encounter any problems or issues that may prevent you from meeting the [May 9] deadline." CP at 82. On May 2, Dianna Polson, administrative assistant at the Monroe Corrections Complex, responded to Gerken: "Responsive documents are attached." CP at 82.

On May 29, 2014, DOC notified Clarence Faulkner that DOC would surrender forty-one pages responsive to his public records request upon payment of $10.44. On June 18, DOC sent Faulkner the forty-one pages. Nevertheless, only two of the pages responded to the first category of Faulkner's request, and the pages constituted DOC property forms, not FedEx invoices. In a letter dated June 20, Faulkner appealed his records request within DOC because the delivered documents did not include the FedEx invoices.

In response to Clarence Faulkner's appeal, DOC headquarters entreated Monroe Corrections Complex to search again for the FedEx invoices. Headquarters also provided a sample invoice. On July 28, 2014, Susan Biller, with the Monroe Corrections Complex, replied:

> I've gotten some additional information and documents from the mailroom. We have a FedEx machine in the mailroom that they create shipping labels from, they were able to input the tracking number from the Property disposition forms that we provided for the original public disclosure request. They then were able to print the attached documents, receipts showing the boxes were shipped and received. We do not have any documents that look like the example you provided.
> I've reviewed the original public disclosure request and nowhere in there does he request packing shipping/tracking information, he asks for invoices which we do not have.

4

CP at 108. On July 28, DOC admitted to Faulkner that the two pages provided to him were not responsive and claimed that DOC lacked records responsive to the first category in his request.

On August 8, 2014, Clarence Faulkner sent a second letter that again appealed the unresponsive delivery of records to category one of his March 23 public record disclosure request. On August 13, Sheri Izatt, a DOC public disclosure coordinator, discovered that DOC's headquarters business office housed invoices and would likely possess the requested FedEx invoices. DOC headquarters produced the invoices to Izatt on August 15.

## PROCEDURE

On August 18, 2014, Clarence Faulkner sued DOC for violating the Public Records Act, chapter 42.56 RCW. On August 19, DOC sent a letter to Faulkner confirming that, after a third search, it had discovered invoices responsive to category one of his records request. On September 25, DOC provided Faulkner with three pages of requested FedEx invoices. The billing statements showed FedEx charged DOC $6.25, $6.46, $6.15, and $6.49 for shipping Faulkner's boxes.

DOC filed a motion to dismiss Clarence Faulkner's suit. In response to the motion, the trial court dismissed Faulkner's claims with prejudice. In a letter opinion, the trial court found:

5

1.) The circumstances of the case involve a situation where D.O.C. legitimately looked for the items sought by Mr. Faulkner, but without success. However, once Mr. Faulkner clarified his request and gave more details, the items were located and provided to him,
2.) In any event, D.O.C. did not act in bad faith.

CP at 221.

## LAW AND ANALYSIS

We review public agency actions challenged under the Public Records Act de novo. RCW 42.56.550(3); *Cornu-Labat v. Hosp. Dist. No. 2*, 177 Wn.2d 221, 229, 298 P.3d 741 (2013). A trial court may dismiss a Public Records Act claim based solely on affidavits. *See O'Neill v. City of Shoreline*, 170 Wn.2d 138, 153, 240 P.3d 1149 (2010). An appellate court stands in the same position as the trial court when the trial court record consists entirely of documentary evidence and affidavits. *Cornu-Labat*, 177 Wn.2d at 229. The reviewing court is not bound by the trial court's factual findings. *Cornu-Labat*, 177 Wn.2d at 229. In this appeal, we review the entire record, including affidavits, before resolving Clarence Faulkner's claim. We agree with the trial court that DOC is not guilty of bad faith.

Clarence Faulkner contends that DOC failed to adequately search and produce records after he provided a detailed request and appealed two unresponsive answers. DOC responds that its search for records was reasonable in light of Faulkner's request for documents limiting the location for the search. His request read, in part: "I am requesting the following records from DOC's Monroe Correctional Complex." CP at 76. We agree

6

with DOC. DOC might have, but has not, argued that it has no obligation to search beyond one of its institutions when the public records request seeks records only from the one institution.

The Public Records Act is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). Agencies must promptly disclose any requested public record unless it falls within a specific, enumerated exemption. RCW 42.56.070(1). An agency is not required to produce a document that does not exist. *Sperr v. City of Spokane*, 123 Wn. App. 132, 133, 96 P.3d 1012 (2004). To determine whether an agency search in response to a public records request was adequate "the focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate." *Neigh. Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 719-20, 261 P.3d 119 (2011).

Adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents. *Neigh. Alliance v. Spokane County*, 172 Wn.2d at 720. Agencies must make more than a perfunctory search and must follow obvious leads as they are uncovered. *Neigh. Alliance*, 172 Wn.2d at 720. If there are additional sources for the information requested, the search should not be limited to one or more places. *Neigh. Alliance*, 172 Wn.2d at 720. Nevertheless, an agency need not search every possible place a record may conceivably be stored, only where it is reasonably likely to be found. *Neigh. Alliance*, 172 Wn.2d at 720.

7

DOC's first search and production of records were reasonable in light of Clarence Faulkner's request. Faulkner emphasizes his request's use of the term "invoices" and the specific package tracking numbers. Nevertheless, the request stated that he sought the records from DOC's Monroe Correctional Complex. DOC reasonably restricted the scope of its search to the Monroe Correctional Complex when Faulkner limited the scope of his request to that facility. To repeat, an agency need not search every possible place a record may conceivably be stored. *Neigh. Alliance v. Spokane County*, 172 Wn.2d at 720 (2011). DOC delivered documents held at the Monroe facility closest in nature to Faulkner's request for FedEx invoices. When Faulkner appealed, DOC agreed that the surrendered papers were unresponsive and replied that the Monroe Correctional Complex lacked any records blanketed by Faulkner's request.

After Clarence Faulkner appealed DOC's first production of records, DOC pursued the FedEx invoices from multiple employees of the Monroe Correctional Complex, including Dianna Polson, Susan Biller, Karen Looney, and workers in the mailroom. None found the invoices. DOC's search in the mailroom and entreaty for the papers from multiple personnel was more than perfunctory and constituted a reasonable search after the appeal. DOC again reasonably concluded that the Monroe facility lacked the shipping invoices.

Since Clarence Faulkner directed his request to the Monroe facility, DOC performed above the standard of care by eventually searching DOC headquarters. When

DOC located the invoices at the headquarters' business office, DOC promptly notified Faulkner of the discovery and punctually surrendered copies.

In 2011, the Washington Legislature, in response to escalating public records requests from jail inmates, amended the Public Records Act to deny relief to an inmate unless he or she proves bad faith. The amendment, codified at RCW 42.56.565(1), reads:

> A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record.

Whether an agency acted in bad faith under the Public Records Act presents a mixed question of law and fact, in that it requires the application of legal precepts, the definition of "bad faith" to factual circumstances, and the details of the alleged Public Records Act violation. *Faulkner v. Dep't of Corr.*, 183 Wn. App. 93, 101-02, 332 P.3d 1136 (2014), *review denied*, 182 Wn.2d 1004 (2015). An offender does not establish bad faith by an agency simply for making a mistake in a record search. *Francis v. Dep't of Corr.*, 178 Wn. App. 42, 63, 313 P.3d 457 (2013), *review denied*, 180 Wn.2d 1016 (2014). In one decision, this court considered DOC's conduct in spending no more than fifteen minutes considering a request and failing to search the usual record storage locations to constitute bad faith. *Francis v. Dep't of Corr.*, 178 Wn. App. at 42. The efforts of DOC in responding to Clarence Faulkner's invoice request widely diverges from its conduct in *Francis*.

9

No. 33180-6-III
*Faulkner v. DOC*

## CONCLUSION

Because DOC did not engage in bad faith, we affirm the trial court and deny Clarence Faulkner any recovery.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

10