# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| CHRISTOPHER COOK, KEVIN EVANS, JOSEPH JONES, CHRISTOPHER S. ROBINSON, | No. 76012-2-I |
| Respondents, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINON |
| Appellant. | FILED: February 6, 2017 |

VERELLEN, C.J. — An inmate requesting public records is entitled to penalties only if the public agency acts in bad faith.[1] Bad faith requires a wanton or willful act or omission with utter indifference to the consequences.[2] Considering all of the circumstances, the act or omission must be unreasonable and warrant harsh punishment.[3]

The Department of Corrections (the Department) appeals four Thurston County Superior Court orders awarding monetary penalties to inmates who requested phone logs under the Public Records Act (PRA), chapter 42.56 RCW. After initially denying

---

[1] Faulkner v. Wash. Dep't of Corr., 183 Wn. App. 93, 102, 332 P.3d 1136 (2014) (quoting RCW 42.56.565(1)).

[2] Id. at 103-04.

[3] Id. at 105-06.

those requests based upon its then-existing policy that phone logs were not public records, the Department revised its policy and provided the requested phone logs. On de novo review, we conclude the Department did not act willfully or wantonly with utter indifference to the consequences. Considering all of the circumstances, harsh penalties are not warranted. We reverse.

## FACTS

The Department contracts with a private company, Global Tel-Link (GTL), to run its inmate phone system and maintain records, including phone logs. Prior to 2013, the Department provided phone logs in response to public record requests by obtaining the logs from GTL. In 2013, the Department became aware of a security incident in which an inmate at one of its facilities requested another inmate's phone logs through public disclosure. The inmate requester was a member of a security threat group and the inmate whose call logs were requested was a confidential informant.

In view of the security issues raised by the 2013 incident, and other concerns, the Department determined that inmate phone logs maintained and possessed by GTL were not public records. In June 2013, the Department issued Newsbrief 13-01 to provide guidance to its staff about processing public record requests for phone logs. Newsbrief 13-01 stated:

> The Department contracts with Global Tel Link (GTL) to manage and provide inmate phone services. Records maintained within the GTL system are not agency public records and therefore not subject to disclosure. They do not need to be gathered and retained in response to a public records request.
>
> If you receive a request from any requester for a copy of inmate telephone logs or inmate telephone audio recordings the following language should be used in your response.

> *"The Department's phone system is run and maintained by an outside vendor and the phone call records you request are not public records created, used or maintained by the department; therefore, the records are not disclosable under the Public Records Act, RCW 42.56."*

Please note, that records pulled from the GTL system for use in agency business (i.e. as an exhibit attached to an investigation) may be subject to disclosure and in this case would need to be pulled and provided in response to any public records request and reviewed for potential release.

If you have questions regarding disclosure of inmate phone system records in response to a public records request, please contact the Agency Public Records Officer.[4]

Christopher Cook, Joseph Jones, Kevin Evans, and Christopher Robinson, inmates housed at Coyote Ridge Corrections Center, requested phone logs. Using the language in Newsbrief 13-01, the Department timely notified them that phone logs are not public records because the phone system is run and maintained by an outside vendor.

Cook, Evans, Jones, and Robinson filed lawsuits in Thurston County Superior Court challenging the Department's denial of their public record requests and seeking monetary penalties. Soon after a Franklin County Superior Court judge ruled in unrelated litigation that inmate phone logs are public records, the Department revised its position and made the requested phone logs available to Cook, Evans, Jones, and Robinson.

The Department opposed any penalties, arguing it initially denied the requests because, consistent with Newsbrief 13-01, it reasonably believed the phone logs were not public records.

---

4 Cook Clerk's Papers (CP) at 34; Evans CP at 36; Jones CP at 40; Robinson CP at 224.

In its letter opinions for Evans, Jones, and Robinson, the trial court ruled the Department's approach appeared to "have been based on a good faith understanding of the law, including awareness of all three elements in the definition of public records."[5] The court also concluded the Department's policy was "objectively reasonable."[6] But in its letter opinion, the trial court concluded the Department failed to perform a search in accordance with or to fully disclose an exception contained in its policy:

> As discussed above, the Department's approach described in its Newsbrief embodied a general rule and an exception to that general rule. The general rule was that phone records did not typically qualify as public records, the exception to that general rule was that, if the records had been used for a government purpose, then they would qualify as a public record. The policy as a whole is reasonable, but its reasonableness depends on application of both parts of the policy, the general rule and its exception.
>
> In implementing its approach, however, the Department did not inform the requesters of the exception. Instead, the response provided by the Department simply explained that phone records were not public records because they were maintained by an outside vendor and they were not created, used or maintained by the Department. This explanation was not complete in that it did not reference that such records would be public records if they were used for a governmental purpose.
>
> The Department also did not perform any search of its own records or take any steps to determine whether the records of [Evans, Jones, and Robinson] came within the exception set forth in its own policy.[7]

The court found bad faith based on:

(1) the inadequacy and incompleteness of the Department's explanation to [Evans, Jones, and Robinson] for not providing the records and (2) the Department's failure to perform any search to determine whether the records [Evans, Jones, and Robinson] sought came within the policy's exception before sending its letter to [Evans, Jones, and Robinson]. See Francis v. Dep't of Corrs, 178 Wn. App. 42, 63 n.5 (2013) (bad faith

---

[5] Evans CP at 247; Jones CP at 523; Robinson CP at 316.

[6] Cook CP at 148; Evans CP at 247; Jones CP at 522; Robinson CP at 316.

[7] Evans CP at 248; Jones CP at 523-24; Robinson CP at 317.

present under RCW 42.65.565(1) if agency fails to conduct a search that is both reasonable and consistent with its policies taking into account the facts and circumstances of the request).[8]

In Cook's case, the court ruled the policy was objectively reasonable, but

> [the Department's] act of failing to describe the terms of that policy to Plaintiff Cook in its response, together with its failure to conduct an adequate search for responsive records in accordance with that policy, did constitute bad faith.[9]

The court concluded Cook, Jones, Evans, and Robinson were each entitled to a monetary penalty of $25 per day between the date the Department received the request and the date the Department made the records available.[10] The trial court denied the Department's motions for reconsideration.[11]

The Department appeals.

## ANALYSIS

We review a challenge to agency action under the PRA de novo.[12] This court sits in the same position as the trial court when the record consists only of affidavits, memoranda of law, and other documentary evidence.[13] Specifically, review of a determination of agency bad faith toward inmates is a mixed question of law and fact.[14]

---

[8] Evans CP at 248-49; Jones CP at 524; Robinson CP at 318.

[9] Cook CP at 148.

[10] Cook CP at 147-49 (totaling $8,775); Evans CP at 249 (totaling $5,875); Jones CP at 524-25 (totaling $7,025); Robinson CP at 318 (totaling $6,925).

[11] The Department moved for reconsideration under CR 59(a)(7) and (9).

[12] City of Federal Way v. Koenig, 167 Wn.2d 341, 344, 217 P.3d 1172 (2009).

[13] Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 252, 884 P.2d 592 (1995).

[14] Faulkner, 183 Wn. App. at 101-02 (quoting Francis v. Dep't of Corr., 178 Wn. App. 42, 51-52, 313 P.3d 457 (2013)).

"When underlying facts are uncontested, we apply de novo review to determine if the facts amount to bad faith."[15]

An inmate is entitled to penalties under the PRA upon showing the agency acted in bad faith.[16] To establish bad faith, an inmate must establish "a wanton or willful act or omission by the agency."[17] In this setting, "'[w]anton' is defined as '[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences.'"[18] Bad faith is not a mere violation of the PRA; it is associated with the most culpable acts by an agency.[19]

The legislature adopted this bad faith standard in 2011 "as a measure to curb abuses by inmates who use the PRA to gain automatic penalty provisions when an agency fails to produce eligible records."[20] The legislature "'intended to afford prisoners an effective records search, while insulating agencies from penalties as long as they did not act in bad faith.'"[21] "By incorporating the bad faith requirement, the legislature allows monetary penalties for inmates only when the agency's conduct defeats the

---

[15] Id. at 102.

[16] Id. (quoting RCW 42.56.565(1)).

[17] Id. at 103.

[18] Id. at 103-04 ("Further, 'wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not.'" (quoting BLACK'S LAW DICTIONARY 1720 (9th ed. 2009))).

[19] Id. at 105.

[20] Id. (citing S.B. 5025, 62d Leg., Reg. Sess. (Wash. 2011)).

[21] Id. at 106 (quoting Francis, 178 Wn. App. at 60).

purpose of the PRA and deserves harsh punishment."[22] "The general purpose of the PRA is to ensure sovereignty of the people and government accountability by providing full access to information concerning government conduct."[23]

"The failure to conduct a reasonable search or the failure to follow policies in a search does not necessarily constitute bad faith."[24] But an agency is subject to penalties if it fails to perform a search consistent with its own policy "'within the broad canopy of reasonableness.'"[25] Reasonableness is determined by examining all the circumstances of the case.[26]

The Department argues no penalties are warranted. We agree.

The plain meaning of Newsbrief 13-01 is that phone logs are not public records, and the response to a request for phone logs should be that

> [t]he Department's phone system is run and maintained by an outside vendor and the phone call records you request are not public records created, used or maintained by the department; therefore, the records are not disclosable under the Public Records Act, RCW 42.56.[27]

The parties dispute the meaning of the additional note in Newsbrief 13-01:

> Please note, that records pulled from the GTL system for use in agency business (i.e. as an exhibit attached to an investigation) may be subject to disclosure and in this case would need to be pulled and provided in response to any public records request and reviewed for potential release.[28]

---

[22] Id.

[23] Id.

[24] Id. at 102 (citing Francis, 178 Wn. App. at 63 n.5).

[25] Id. (quoting Francis, 178 Wn. App. at 63).

[26] Francis, 178 Wn. App. at 63 n.5)

[27] Cook CP at 34; Evans CP at 36; Jones CP at 40; Robinson CP at 224.

[28] Cook CP at 34; Evans CP at 36; Jones CP at 40; Robinson CP at 224.

On its face, this note is an internal guideline informing staff that exhibits to investigations are not the subject of Newsbrief 13-01.[29] The note is narrow in scope, "(i.e. [that is] exhibits attached to an investigation)" and tentative in nature, "may be subject to disclosure." We do not discern any implied policy to search investigation files or to disclose the substance of the internal note.

The Department consistently applied the plain meaning of Newsbrief 13-01 and gave the requesters the specific response dictated by the policy. When the Department reconsidered its policy and concluded phone logs were public records, it promptly made the requested phone logs available. Merely because the Department could have offered more information does not mean that its conduct was willful or wanton. The Department reasonably complied with its then-existing objectively reasonable belief that phone logs were not public records. It reasonably construed Newsbrief 13-01 as limited to the policy that phone logs are not public records. Under these circumstances, the failure to search or disclose to inmates that exhibits to investigations may be public records did not jeopardize the sovereignty of the people or government accountability. We conclude the Department did not act in bad faith and the "harsh punishment" of monetary penalties is not warranted.

RCW 42.56.550(4) provides, "Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record . . . shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." Based on the Department's concessions that the inmate phone logs are

---

[29] We do not rely on any of the declarations offered by the Department on its motion for reconsideration.

No. 76012-2-I/9

public records, the Department acknowledges remand is appropriate to determine reasonable costs and attorney fees.

Accordingly, we reverse and remand to the trial court to revise its award of costs and attorney fees to the inmate requesters consistent with this opinion.

WE CONCUR:

Cox, J.

9