Siddoway, J.
*23 ¶ 1 In this Public Records Act (PRA)[1] appeal, Sky Allphin[2] challenges the trial court's (1) rejection of his objections to a show cause motion made by the Washington State Department of Ecology (Ecology), (2) denial of his request for an in camera review, and (3) findings, conclusions and judgment determining that Ecology did not violate the PRA.
¶ 2 In the published portion of the opinion, we hold that an agency can rely on CR 7(b)(1) to move for judicial review under RCW 42.56.550(3), and the "show cause" character of Ecology's motion, while not the procedure provided by that rule, did not prejudice Mr. Allphin. We address his remaining assignments of error in the unpublished portion of the opinion. Finding no error or abuse of discretion, we affirm.
FACTS AND PROCEDURAL BACKGROUND
¶ 3 At relevant times, Chem-Safe Environmental, Inc. operated a hazardous waste transport and transfer facility in Kittitas County (County). ABC Holdings, Inc. is Chem-Safe's parent company. Sky Allphin is the president of both companies.
¶ 4 This is the most recent appeal in a lawsuit commenced in February 2013 by Kittitas County. For a couple of years before 2011, the County's Public Health Department, assisted by hazardous and solid waste specialists from Ecology, tried without success to bring Chem-Safe into compliance with waste-handling licensing regulations. On January 27, 2011, having determined that operations at the Chem-Safe facility were a public nuisance, the County issued a notice of violation and abatement requiring that all operations be suspended until a solid waste permit was obtained. During Chem-Safe's unsuccessful administrative appeals and the judicial review that followed,[3] Mr. Allphin made a number of public record requests to the County and Ecology seeking records pertaining to the waste facility litigation. He began with similar, broad requests that he served on both agencies on October 17, 2012.
¶ 5 Roger Johnson, the public records coordinator at Ecology's Central Regional Office, handled Ecology's response. He indicated in his initial response that it would take until November 19, 2012, for Ecology to complete its response, although he later realized and notified Mr. Allphin that it would take longer. Ecology ultimately released over 14,000 pages of records to Mr. Allphin in three installments:
¶ 6 On November 15, 2012, Mr. Johnson produced records from staff members in the Waste 2 Resources Program and the Hazardous Waste and Toxics Reduction Program. Ecology's Southwest Regional Office provided Mr. Allphin with its responsive records that day by providing a hyperlink to an Ecology file transfer protocol (FTP) site from which he could download documents;
¶ 7 On January 11, 2013, Mr. Johnson provided Ecology's first set of Toxics Cleanup Program records, which was by far its largest installment of production. This production was also made by providing a hyperlink to an FTP site from which Mr. Allphin could download documents; and *24 ¶ 8 On February 26, 2013, Mr. Johnson provided a small third installment of responsive records to Mr. Allphin's lawyer.
¶ 9 During the period Mr. Johnson was responding to the request, he was contacted by Kittitas County Deputy Prosecutor Zera Lowe, who was concerned that Ecology might have records in its possession that the County considered attorney-client privileged or work product. She asked Mr. Johnson to provide her with any Chem-Safe related correspondence located at Ecology that was between the County's legal counsel and Ecology staff. Mr. Johnson obliged. Ms. Lowe later notified Mr. Johnson of 19 records she believed were exempt from disclosure and asked that Ecology defer its production to Mr. Allphin to give the County the opportunity to seek an injunction preventing their release.
¶ 10 In producing Ecology's third and otherwise final installment of records in February 2013, Mr. Johnson provided Mr. Allphin's lawyer with a list of the 19 records that Kittitas County was asking the superior court to review for their exempt status. In a declaration filed below, Mr. Johnson testified that with the third installment, "I had disclosed to Mr. Allphin or his attorney everything yielded by the Central Regional Office's search for documents responsive to the October 17, 2012 request, except for the 19 documents withheld pursuant to the County's request." Clerk's Papers (CP) at 234.
¶ 11 The County's decision to seek a determination of the exempt status of the 19 records led to its commencement of the action below. On February 22, 2013, the County sued Mr. Allphin, his companies, and Ecology, to enjoin Ecology's production of the 19 records. The temporary restraining order requested by the County was entered on May 6, 2013, and was extended thereafter, so that the trial court could review the 19 records in camera. On December 19, 2013, the court permanently enjoined Ecology from releasing 11 of the 19 records. Ecology produced the 8 records that were not subject to the injunction on December 30, 2013. Mr. Allphin appealed the injunction and other rulings involving the County and this court affirmed.[4] A petition for review was granted in part by the Washington Supreme Court and is pending.
¶ 12 During the four months Ecology was collecting and producing records in response to the October 2012 request and in years thereafter, Mr. Allphin submitted dozens of additional requests. Ecology identifies a total of 28 requests by Mr. Allphin that were either for additional public records, for assistance, for duplicates, or for expedited disclosure. Mr. Allphin's assignments of error in this appeal involve only one other public record request, however: a request made on January 8, 2014, which is discussed in more detail below.
¶ 13 In March 2014, the trial court granted Mr. Allphin leave to amend his original answer to the County's declaratory judgment action. The court was persuaded that Mr. Allphin always wanted affirmative relief from the County, but pleaded unartfully in his answer filed on March 20, 2013. It allowed him to amend to assert counterclaims against the County.
¶ 14 On November 3, 2014, Mr. Allphin filed a second amended answer, this time adding cross claims against Ecology. He then embarked on discovery. By December 2015, he had served two sets of interrogatories and requests for production on Ecology and deposed five Ecology employees. Ecology had responded to the discovery and produced thousands of pages of records in response to the requests for production.
¶ 15 On January 26, 2016, Ecology, wanting to resolve the matter with a determination by the court that it had not violated the PRA, filed a motion for an order to show cause. It originally noted the hearing for March 10, 2016, but renoted it for April 1, 2016, at Mr. Allphin's lawyer's request. The hearing was delayed further as a result of objections and motions raised by Mr. Allphin and by the court's own schedule.
*25 ¶ 16 When the show cause motion was ultimately heard in August 2016, Mr. Allphin advanced claims of PRA violations he had asserted in a cross motion "for partial relief," but simultaneously objected to Ecology's show cause motion as unlawful procedure. CP at 2194. Essentially, he contended that a few issues could be resolved in his favor but otherwise, unless summary judgment was appropriate, discovery should continue until he was ready to move for an order to show cause under RCW 42.56.550(1). He also asked the court to review in camera a large number of Ecology documents.
¶ 17 The trial court rejected Mr. Allphin's objections to the show cause procedure, refused his request to conduct further in camera review, found that Ecology had not violated the PRA, and entered judgment in Ecology's favor. Mr. Allphin appeals.
ANALYSIS
¶ 18 Mr. Allphin makes five assignments of error. We address them in the order he presents them.
Assignment of Error 1: The trial court erred when it granted Ecology's motion to show cause and dismissed Chem-Safe's cross claims
¶ 19 Mr. Allphin contends that the trial court's disposition of Ecology's show cause motion was error for two reasons: first, because "no statute, rule, or case authorizes an agency to use a show cause hearing to dispose of a requester's claims" and second, because discovery was "admittedly incomplete and due to the requester." Br. of Appellant at 4.
Illegal procedure
¶ 20 RCW 42.56.550(1) and (2) expressly make a show cause procedure available to public record requesters wishing to require an agency to demonstrate why it refuses to allow inspection or copying, or why its estimate of response time is reasonable. In support of his "illegal procedure" argument, Mr. Allphin points out that the provisions authorize a show cause procedure upon the motion "of any person" who has "been denied an opportunity to inspect or copy a public record by an agency" or who "believes that an agency has not made a reasonable estimate of the time that the agency requires to respond." Id. Because the provisions speak of motions by only requesters, not agencies, he argues that an agency does not have the same right to note a hearing for judicial review of its action.
¶ 21 Not to put too fine a point on it, but there was no statutory basis for the cross claims Mr. Allphin asserted against Ecology. That is not a problem, because as our Supreme Court held in 2005, actions under the PRA are not special proceedings, so a party can proceed in any manner provided by the civil rules. "[A]ctions under the [PRA] are not [statutorily defined]. The statute simply does not define a special proceeding exclusive of all others." Spokane Research & Def. Fund v. City of Spokane , 155 Wash.2d 89, 105, 117 P.3d 1117 (2005). For that reason, the show cause procedure provided by RCW 42.56.550(1) and (2)"is discretionary, not mandatory," Spokane Research , 155 Wash.2d at 106, 117 P.3d 1117, and a party can initiate an action by a complaint in intervention even though that procedure is not addressed by the PRA. Id. at 105, 117 P.3d 1117.
¶ 22 Washington courts have not placed limits on civil rule procedures that are available in PRA actions. See, e.g. , Neigh. All. of Spokane County v. Spokane County , 172 Wash.2d 702, 715-16, 261 P.3d 119 (2011) (discovery is available to a requester under the civil rules, even though discovery is not addressed by the PRA). Agencies and objectors to disclosure have the same right to proceed under the civil rules as do record requesters. E.g. , City of Lakewood v. Koenig , 160 Wash. App. 883, 889-90, 250 P.3d 113 (2011) (civil rules permitting discovery apply, and "there is no authority in the civil rules to limit their application to plaintiffs"); Rufin v. City of Seattle , 199 Wash. App. 348, 360-63, 398 P.3d 1237 (2017), review denied , 189 Wash.2d 1034, 407 P.3d 1154 (2018) (agency may make a CR 68 offer of judgment in a PRA action); John Doe G v. Dep't of Corr. , 197 Wash. App. 609, 629, 391 P.3d 496 (2017), rev'd , --- Wash.2d ----, 410 P.3d 1156 (2018)
*26 (objectors to disclosure of records under the PRA can be certified as a class under CR 23 ), http://www.courts.wa.gov/opinions/pdf/942030.pdf.
¶ 23 It is true that the use of a show cause procedure is not contemplated in the civil rules except for the reference in CR 60(e)(2) to the procedure used in vacating a judgment. 9 DAVID E. BRESKIN, WASHINGTON PRACTICE: CIVIL PROCEDURE FORMS AND COMMENTARY § 7.45 author's cmt. at 145 (3d ed. 2000). Like the federal rules of civil procedure, our civil rules provide generally that the application to the court for an order shall be by motion under CR 7(b)(1). The distinct characteristics of a "show cause" motion have been described by the Seventh Circuit Court of Appeals:
Show-cause motions historically served two purposes: First, the motion was a way to bring matters to the district court more speedily than other methods of presentment prior to the Federal Rules of Civil Procedure. See 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1195 (3d ed. 2004). Second, the granting of a show-cause motion provided notice to the nonmoving party of what he must do to avoid some other court action, such as the issuance of an injunction or writ. Id. A show-cause motion essentially asks a district court to issue an order requiring the nonmovant to show the court by a certain date why the court should not take some other action [....] In other words, the show-cause order satisfies the due-process notice requirement by giving the nonmoving party notice of his opportunity to respond before the substantive request for relief is entertained.
United States Sec. & Exch. Comm'n v. Hyatt , 621 F.3d 687, 695 (7th Cir. 2010).
¶ 24 As explained by the Wright and Miller treatise, the drafters of the federal rules "apparently felt that the historical and technical procedures surrounding [use of orders to show cause] did not comport with the philosophy of simplifying procedure underlying the federal rules." 5 WRIGHT & MILLER , supra , § 1195, at 70. As the authors further explain, under civil rules a party can obtain the same "show cause" result by filing a motion and obtaining an order to shorten time within which the motion will be heard. Id. at 70-71. As a result, "a request for a show cause order usually will be entertained and treated as a motion, if doing so will not prejudice the opposing parties." Id. at 71 & n.5 (collecting cases).
¶ 25 In requiring that applications for court orders be by motion and providing a process for hearing a motion on shortened time, Federal Rules of Civil Procedure (FRCP) 7(b) and 6(c)(1)(C)[5] are substantively the same as CR 6(d) and 7(b), so we may look to decisions and analysis of the federal rules for guidance. Am. Disc. Corp. v. Saratoga W., Inc. , 81 Wash.2d 34, 37, 499 P.2d 869 (1972). We find persuasive the federal cases in which a show cause procedure that has not prejudiced a responding party is reviewed as if the moving party had followed court rules. E.g. , Marshall v. Weyerhaeuser Co. , 456 F.Supp. 474, 477 n.2 (D.N.J. 1978) ("While the Federal Rules of Civil Procedure do not specifically recognize an Order to Show Cause, federal courts have uniformly acknowledged and treated it similarly to the typical motion but for its preferential place on the court's docket.").
¶ 26 Entertaining Ecology's show cause motion and treating it as if it had been properly brought under CR 7(b) did not prejudice Mr. Allphin. Ecology did not seek an expedited hearing. It provided more than the *27 notice required for a motion under the civil rules even before it honored Mr. Allphin's request to defer the hearing by 3 weeks. Almost 3 years had passed since Ecology had completed virtually all of its document production and the County had sued. Over 2 years had passed since the trial court resolved the County's claim of exemption. Over 14 months had passed since Mr. Allphin had amended his answer to assert his cross claims. As discussed below, there had been a full opportunity for discovery. Ecology appears to have brought a show cause motion simply to parallel the procedure used when judicial review is sought by a requester under RCW 42.56.550(1) and (2).
¶ 27 Whether a record requester makes a show cause motion under RCW 42.56.550(1) or (2) or an agency makes a motion for judicial review under CR 7(b), the nature of the hearing is the same: RCW 42.56.550(3), authorizing hearings based solely on affidavits, applies to "[j]udicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520." Contrary to the suggestion of Mr. Allphin, Ecology never contended that by bringing a show cause motion it had shifted the burden of persuasion to him. See, e.g. , CP at 109 (Ecology's motion). The trial court properly held Ecology to its burden. CP at 2654 (Trial Court's Finding of Fact 2).
¶ 28 The PRA is a "strongly worded mandate for broad disclosure of public records." Hearst Corp. v. Hoppe , 90 Wash.2d 123, 127, 580 P.2d 246 (1978). But the legislature did not intend that disputes over whether an agency has complied with its important obligations under the PRA should drag on indefinitely. Cf. RCW 42.56.550(6) (establishing a one-year statute of limitations for PRA actions against agencies). As with other civil disputes, parties have means under the civil rules for moving a dispute toward an orderly resolution. The trial court did not proceed illegally by engaging in judicial review at the request of Ecology.
Affirmed.
¶ 29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
WE CONCUR:
Fearing, C.J.
Pennell, J.

Ch. 42.56 RCW.

Mr. Allphin was the record requester, although ABC Holdings, Inc. and Chem-Safe Environmental, Inc. were named defendants below and collectively asserted the cross claims whose disposition is appealed. For simplicity, we refer to the three parties collectively as "Mr. Allphin."

See ABC Holdings, Inc. v. Kittitas County , 187 Wash. App. 275, 284-85, 289, 348 P.3d 1222, review denied , 184 Wash.2d 1014, 360 P.3d 817 (2015).

See Kittitas County v. Allphin , 195 Wash. App. 355, 381 P.3d 1202 (2016), review granted in part , 187 Wash.2d 1001, 386 P.3d 1089 (2017).

Hyatt points to FRCP 7(b) and 6(c)(1)(C) as authorizing the equivalent of show cause procedure.
FRCP 7(b) provides:
Motions and Other Papers .
(1) In General. A request for a court order must be made by motion. The motion must:
(A) be in writing unless made during a hearing or trial;
(B) state with particularity the grounds for seeking the order; and
(C) state the relief sought.
FRCP 6(c)(1)(C) provides:
Motions, Notices of Hearing, and Affidavits .
(1) In General. A written motion and notice of the hearing must be served at least 14 days before the time specified for the hearing, with the following exceptions:
....
(C) When a court order-which a party may, for good cause, apply for ex parte-sets a different time.