IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROGER W. FLOOK, JR., | ) | |
| | ) | No. 39553-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON DEPARTMENT OF | ) | UNPUBLISHED OPINION |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Roger Flook filed a Public Records Act (PRA), chapter 42.56
RCW, request with the Department of Corrections (DOC). Based on a DOC record
specialist's misunderstanding of the DOC's policies, Mr. Flook was informed that no
responsive records existed. Through a second PRA request , Mr. Flook obtained the
desired records. Thereafter, he filed suit claiming the DOC had violated the PRA with
respect to his first request. The trial court granted Mr. Flook's motion for partial
summary judgment, concluding the DOC had violated the PRA. The court subsequently
found the DOC's failure to produce the records was not done in bad faith and denied Mr.
Flook penalties.

No. 39553-7-III
*Flook v. Dep't of Corr.*

On appeal, Mr. Flook argues the trial court erred in finding the DOC did not act in bad faith and in determining the records specialist was not a party for purposes of responding to requests for admissions.

We affirm the trial court's finding that the DOC did not act in bad faith. We decline review of Mr. Flook's requests for the admissions issue.

BACKGROUND

Mr. Flook is an incarcerated individual housed at the DOC's Airway Heights Correction Center. On April 20, 2021, Mr. Flook sent a public records request (first request) to the DOC's Public Records Unit (PRU). The request stated:

> Pursuant to the Public Records Act (PRA), RCW 42.56.et.seq., I am requesting that you provide records pertaining to DOC Jpay.[1] This is to include, but not limited to all copies, writings, pictures, and electronic data pertaining to the following records:
>
> 1. All Jpay archived emails including picture attachments sent to inmate Roger Flook DOC#841039.
>
> 2. All incoming Jpay emails including picture attachments sent to inmate Roger Flook DOC #841039 that were rejected.
>
> 3. The Jpay contract with DOC.
>
> Please email all records pertaining to this PRA request to rwf81jr@gmail.com. Also send a paper copy to me.

Clerk's Papers (CP) at 317. Mr. Flook's first request was assigned to public records

---

[1] JPay is a private vendor that contracts with the DOC "to provide services to incarcerated individuals, including e-messaging, video visitation, and music downloads." Clerk's Papers (CP) at 272.

2

specialist Lori Jones.  At the time, Ms. Jones was one of the newest staff members with the PRU and had the third highest caseload among records specialists.

Ms. Jones responded to Mr. Flook's request and added a note to GovQA, the DOC's PRA tracking system, that read, "Review request, requestor needs to obtain records from the JPay system for the archived and incoming emails along with the contract.  Closed request as no records exist.  4\21\21."  CP at 321.  In her letter to Mr. Flook, dated April 21, 2021, Ms. Jones copied the language from the NewsBrief,[2] that she believed indicated that the records needed to be requested from JPay directly.  Ms. Jones's letter provided, in part:

> The records you requested from the JPay messaging system are not public records . . . unless they were used in agency business.  A search has been conducted and we found no responsive JPay records that were used for

---

[2] PRA requests are processed by the procedures found in DOC Policy 280.510 and in chapter 137-08 WAC.  The DOC supplements its policies with "NewsBriefs," which are documents that explain changes in policy or guidance on certain types of requests. CP at 121.

> The NewsBrief specific to the release of JPay records provided:

> JPay records housed in JPay's system and on their servers[,] which are not used for agency business are not agency public records and therefore not subject to disclosure.  They do not need to be gathered from the JPay system in response to a public records request.

> However, JPay records that have been used in agency business (even if the records [are] still in the JPay system) are public records and must be gathered, reviewed and provided consistent with any other agency public record.

CP at 314 (emphasis omitted).

agency business. It is my understanding that you can contact JPay directly through your local kiosk.

CP at 239.

Six months after his first request, Mr. Flook submitted another PRA request (second request) again seeking a copy of the JPay contract with the DOC.[3] Mr. Flook's second request was assigned to a different records specialist. Two days later, the DOC sent Mr. Flook a letter confirming his request had been received and that the records should be sent to him on or before January 25, 2022. On January 24, the PRU sent an e-mail to Mr. Flook's e-mail address and provided the 65 pages of records identified as being responsive to his second request. Mr. Flook received the JPay contract that same day.

Six weeks after he received the JPay contract, Mr. Flook filed suit, alleging the DOC violated the PRA when, in bad faith, it failed to search for and make responsive records available pursuant to his first request, specifically, the JPay contract. He asked that the court order statutory per diem penalties and grant him costs and fees.

After Mr. Flook filed his lawsuit, the director of the PRU contacted Ms. Jones for more information regarding Mr. Flook's first request. Ms. Jones reported that she misunderstood the DOC's policy regarding JPay records and believed the JPay contract

---

[3] The DOC's contract with JPay was formerly available to the public on the DOC's website. In April 2022, the DOC contracted with a different telecommunications service, Securus Technologies, LLC.

to be a JPay record and therefore not a public record. Ms. Jones admitted she had incorrectly informed Mr. Flook that his request for the JPay contract made in his first request needed to be requested directly from JPay.

Ms. Jones immediately reprocessed the first request. When no responsive JPay messages were found related to Mr. Flook's request for specific incoming and outgoing JPay messages, the DOC informed Mr. Flook that there were "no responsive records." CP at 334. Ms. Jones also provided Mr. Flook with another copy of the JPay contract free of charge on May 12, 2022.

Mr. Flook moved for partial summary judgment on the issue that the DOC violated the PRA in handling his first request. He reserved the issue of bad faith and statutory daily penalties. The DOC admitted there was a violation of the PRA with regard to Mr. Flook's first request. The superior court accepted the DOC's admission, concluded the DOC had violated the PRA, and granted Mr. Flook's motion for partial summary judgment. The court also granted Mr. Flook reasonable costs and attorney fees incurred in bringing the action and noted that the amount of fees and costs would be determined at a later hearing.

During discovery, Mr. Flook submitted "Plaintiff's Fourth Set of Admissions" to the DOC. CP at 368 (some capitalization omitted). All 11 requests for admissions were specifically directed at Ms. Jones. In response, the DOC objected to every request for admission from Ms. Jones with the same language: "This request is improper as it is

5

directed to a third party, not the [DOC]. Requests for admission cannot be directed to non-parties." CP at 368-71.

In November 2022, the DOC filed a motion for judicial review[4] seeking a determination from the superior court on whether the DOC had acted in bad faith and whether Mr. Flook was entitled to penalties. In support of its motion, the DOC provided declarations from Ms. Jones and the director of the PRU. Ms. Jones's declaration explained her misunderstanding of the DOC's policy on JPay records. She stated, in part:

> 5. . . . I mistakenly believed that JPay records were housed on the JPay system, and therefore were not public records held by the [DOC] for purposes of disclosure under the PRA. My understanding was that requestors must request JPay records directly from JPay. I understood the JPay contract to be a JPay record.
>
> 6. When I wrote the response letter to Flook, I copied the language from the NewsBrief which I believed indicated that the records needed to be requested from JPay directly.
>
> 7. . . . I added a note in GovQA reading, "Review request, requestor needs to obtain records form the JPay system for the archived and incoming emails along with the contract. Closed request as no records exist. . . ."
>
> 8. After receiving notice of Flook's lawsuit in March 2022 . . . I realized my mistake in my response to [the first request, and] I immediately re-processed the request. . . .
>
> . . . .

---

[4] Under the PRA, a person who has been denied a public record by an agency may seek judicial review and require the agency to show cause as to why it has refused to allow inspection or copying of the public record. RCW 42.56.550(1). Alternatively, an agency wishing to seek review may rely on CR 7(b)(1) to move for judicial review under RCW 42.56.550(3). *See Kittitas County v. Allphin*, 2 Wn. App. 2d 782, 792, 413 P.3d 22 (2018).

> 11. My intent was never to purposefully deny Flook with access to the JPay contract. My response to his request was based on my misunderstanding of the Newsbrief and JPay records.

CP at 252-53.

Mr. Flook sought an extension of time to respond to the DOC's motion for judicial review. His request for additional time was based on the DOC's objection to his requests for admission directed to Ms. Jones. Mr. Flook argued that he could not respond with evidence to defeat the DOC's motion for judicial review without a response to the requests for admission from Ms. Jones. The trial court agreed with the DOC's argument that a request for admission cannot be addressed to someone other than a party to the lawsuit. Nevertheless, the court granted Mr. Flook's request for a continuance, but concluded that, under CR 36, Ms. Jones was not a party to the lawsuit.

Mr. Flook responded to the DOC's motion for judicial review on December 14, 2022. He titled his response "Plaintiff's Cross-Motion for Summary Judgment on Bad Faith in Response to Motion for Judicial Review." CP at 445 (boldface and some capitalization omitted). He argued he was entitled to judgment as a matter of law because there was no genuine issue of material fact that the DOC acted in bad faith.

Ultimately, the superior court granted the DOC's motion for judicial review and denied Mr. Flook daily penalties. Relevant to this appeal is the court's finding of fact 11, which provides:

Ms. Jones received training on searching and responding to public records held by the Department of Corrections. In April 2021, when Ms. Jones was assigned [the first request], she was a relatively new employee, and the [PRU] was understaffed, so all public records specialists had a higher than normal case load. When she reviewed [the first request], she misunderstood the Department's policy regarding JPay records. Ms. Jones mistakenly believed that JPay records, including the JPay contract, were not records available for public disclosure. Ms. Jones was notified of her mistake when Mr. Flook filed this lawsuit. Once she realized her mistake, she reprocessed the request. Ms. Jones['s] intent was not to purposefully deny Mr. Flook the JPay contract, her response to [the first request] was based on her misunderstanding of Department policy, NewsBriefs, and their application to JPay records.

CP at 481-82. The superior court also entered the following relevant conclusions of law:

7.   In determining whether the [DOC] acted in bad faith, the Court must consider the totality of the circumstances, the purpose of the PRA, and the purpose of awarding any penalties. There is no per se bad faith simply because no search was done.

8.   The [DOC's] actions here do not rise to the level of a willful or wanton act. Ms. Jones did not conduct a search, and erred in her response to [the first request] because she misunderstood the [DOC]'s policy pertaining to JPay records. As soon as she was notified of her mistake, she took steps to correct it.

9.   In considering the totality of the circumstances, the Court must analyze the [DOC]'s actions as a whole, which goes beyond Ms. Jones. The [DOC]'s actions were not intended to defeat the purpose of the PRA because if they were, [Mr. Flook] would not have received a copy of the JPay contract at all. . . . The purpose of the PRA was served because Mr. Flook received the records he requested.

10.  The purpose for penalties under the PRA is to promote transparency and to deter improper denial of public records. Under these circumstances, these facts do not rise to the very high standard and high level of culpability necessary to find that an agency acted in bad faith. When the Court does not find bad faith, penalties are not appropriate, nor can they be statutorily given.

8

11. The [DOC] did not act in bad faith in its response to [the first request].

CP at 484.

Mr. Flook appeals.

ANALYSIS

On appeal, Mr. Flook argues that the trial court erred in finding the DOC's failure to properly respond to his first request was not done in bad faith and when it concluded Ms. Jones was not a party to the lawsuit for purposes of responding to his requests for admissions. We disagree with his first contention and decline review of his second.

WHETHER THE TRIAL COURT ERRED IN FINDING THE DOC DID NOT ACT IN BAD FAITH

Mr. Flook argues the trial court erred when it determined the DOC's failure to properly respond to his first request did not amount to bad faith and in denying him daily penalty assessments.

The PRA mandates "all state and local agencies to disclose any public record upon request, unless it falls within certain specific enumerated exemptions." *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 734, 218 P.3d 196 (2009). Agencies are required to conduct "adequate searches for responsive records and an inadequate search is treated as a PRA violation." *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021).

Here, the issue of whether the DOC violated the PRA was decided on summary judgment. The trial court concluded the DOC violated the PRA when it failed to adequately respond to Mr. Flook's first request. Because neither party challenges that decision, our review is limited to the trial court's determination that the DOC did not act in bad faith.

Ordinarily, the prevailing party in a PRA action is entitled to the costs and fees they incur in bringing the action. RCW 42.56.550(4). The court also has the discretion to award such a person a monetary amount, not to exceed one hundred dollars, for each day they are denied the records. *Id*. However, the legislature has limited this penalty provision of the PRA for incarcerated individuals.

Under RCW 42.56.565, PRA penalties are prohibited on record requests made by incarcerated individuals "unless the court finds that the agency acted in *bad faith* in denying the person the opportunity to inspect or copy a public record." RCW 42.56.565(1) (emphasis added). The burden is on the incarcerated individual to prove the agency acted in bad faith. *See Faulkner v. Dep't of Corr.*, 183 Wn. App. 93, 103, 332 P.3d 1136 (2014). If the court finds that the agency did not act in bad faith, the inquiry ends and the court need not engage in a penalty assessment. *See Hoffman v. Kittitas County*, 194 Wn.2d 217, 226, 449 P.3d 277 (2019).

The PRA authorizes the trial court to "conduct a hearing based solely on affidavits," as the trial court did in this case. RCW 42.56.550(3). When judicial review

10

is based solely on affidavits, appellate review of a trial court's findings and conclusion is de novo. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994); *Zink v. City of Mesa*, 140 Wn. App. 328, 336, 166 P.3d 738 (2007). Stated otherwise, if a trial court's decision was based only on documentary evidence, this court sits in the same position as the trial court and is "not bound by the trial court's findings on disputed factual issues." *Progressive Animal Welfare*, 125 Wn.2d at 253.

"Whether an agency acted in bad faith under the PRA presents a mixed question of law and fact, in that it requires the application of legal precepts (the definition of 'bad faith') to factual circumstances (the details of the PRA violation)." *Francis v. Dep't of Corr.*, 178 Wn. App. 42, 51-52, 313 P.3d 457 (2013). However, the PRA does not define "bad faith." Instead, "bad faith" has been defined by case law.

In *Francis*, Division Two of this court held:

> [A] failure to conduct a reasonable search for requested records . . . supports a finding of 'bad faith' for purposes of awarding PRA penalties to incarcerated requestors. This standard does not make an agency liable for penalties to incarcerated persons simply for making a *mistake* in a record search or for following a legal position that was subsequently reversed. In addition . . . an agency will be liable, though, if it fails to carry out a record search consistently with its proper policies and within the broad canopy of reasonableness.

*Id.* at 63 (emphasis added) (footnote omitted). On reconsideration, the court clarified, writing "[t]his is not to say the failure to conduct a reasonable search or the failure to follow policies in a search by themselves necessarily constitutes bad faith." *Id.* at 63 n.5.

11

"[A]mong other potential circumstances, bad faith is present under RCW 42.56.565(1) if the agency fails to conduct a search that is both reasonable and consistent with its policies." *Id.* Reasonableness is determined by examining all the circumstances of the case. *See id.*

Less than a year later, in *Faulkner v. Department of Corrections*, 183 Wn. App. 93, 332 P.3d 1136 (2014), we took the opportunity to further clarify the bad faith standard. "[B]ad faith incorporates a higher level of culpability than simple or casual negligence." *Id*. at 103. Instead, "to establish bad faith, an inmate must demonstrate a wanton or willful act or omission by the agency." *Id.* We defined "wanton" as

> "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences." Further, "[w]anton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not."

*Id.* at 103-04 (internal quotation marks omitted) (quoting BLACK'S LAW DICTIONARY 1719-20 (9th ed. 2009)). Under this standard, "[p]enalties are owed when an agency acts unreasonably with utter indifference to the purpose of the PRA." *Id.* at 105.

Applying the facts of Faulkner's case to our clarified bad faith standard, we concluded that the DOC had not acted "unreasonably or maliciously while being utterly indifferent to the consequences" when it originally failed to produce the record based on an "inadvertent mistake in summarizing the request." *Id.* at 107-08. In fact, we noted

12

that, once the DOC was alerted to the mistake, it located and provided the requested document to Faulkner. We held that the trial court did not abuse its discretion when it did not find bad faith. *Id.* at 108.

Here, the trial court correctly applied the totality of the circumstances standard. Albeit Ms. Jones failed to conduct any search following Mr. Flook's first request, such a search would have been futile due to her misunderstanding of the DOC's policy on JPay records. Nothing in the record suggests that Ms. Jones acted maliciously, unreasonably, or with the purpose of denying Mr. Flook a copy of the DOC's contract with JPay. In fact, Ms. Jones declared it was never her intent to deny Mr. Flook access to the record and her failure to do so was based on her misunderstanding of the DOC's NewsBrief related to JPay records. Both Ms. Jones's letter to Mr. Flook directing him to make the request directly to JPay and her note in GovQA stating "requestor needs to obtain records from the JPay system for the archived and incoming emails along with the contract" are consistent with her testimony and illuminate her misunderstanding of the DOC's policies. CP at 321.

Mr. Flook specifically takes issue with the language Ms. Jones used in her responsive letter, "[a] search has been conducted and we found no responsive JPay records that were used for agency business," when she failed to conduct a search. CP at 239. He attempts to draw a parallel between his case and the "dilatory search" described in *Francis*. Admittedly, Ms. Jones's letter is inartful and possibly misleading since she

13

did not actually conduct a search for any JPay records. However, if a records specialist's understanding of the policy was that a requestor needed to request JPay records directly from JPay itself, it is reasonable the records specialist would not conduct a search. Ms. Jones's failure to search for records that she believed held by another entity does not show a malicious intent to deny a record.

Mr. Flook also argues the DOC acted wantonly because it did not produce the JPay contract until a year after he filed his first request. However, Mr. Flook did not appeal Ms. Jones's response to his first request and it was not until Mr. Flook filed suit that Ms. Jones was made aware of her mistake. Once becoming aware of her mistake, Ms. Jones promptly reprocessed Mr. Flook's request and produced the record again, free of charge. Because Ms. Jones took immediate action to correct her mistake, her actions do not show that she was indifferent to whether harm would result; thus, Ms. Jones's actions did not rise to the level of a willful or wanton denial of records.

Furthermore, the DOC did not act unreasonably with an utter indifference to the purpose of the PRA. The evidence supports that, pursuant to his second request, Mr. Flook was provided with a copy of the JPay contract prior to filing the instant lawsuit. Had it been Ms. Jones's and the DOC's intent to maliciously deny Mr. Flook a disclosable public record, the DOC would have denied his second request. Instead, the records specialist assigned to Mr. Flook's second request understood the JPay contract to be a public record and quickly provided the record to Mr. Flook. Moreover, the DOC's

14

contract with JPay was publicly available on the DOC's website.[5]  There exists no legitimate reason why the DOC would seek to prevent the disclosure of a document that is publicly available on its website until the DOC contracted with Securus Technologies.

Reviewing the evidence anew, Ms. Jones's failure to produce the JPay contract pursuant to Mr. Flook's first request was the result of a mistake and misunderstanding of the DOC's policies.  Ms. Jones did not act unreasonably or maliciously while being utterly indifferent to the consequences.  Considering the totality of the circumstances, the trial court correctly determined the DOC's actions did not rise to the level of a willful or wanton act.

The superior court did not err when it concluded the DOC's failure to produce the JPay contract in response to Mr. Flook's first request was not in bad faith and denied Mr. Flook daily penalties.

---

[5] In Washington, the fact "that the requesting party possesses the documents does not relieve an agency of its statutory duties, nor diminish the statutory remedies allowed if the agency fails to fulfill those duties." *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 727, 261 P.3d 119 (2011).  "[T]he remedial provisions of the PRA are triggered when an agency fails to properly disclose and produce records, and any intervening disclosure serves only to stop the clock on daily penalties, rather than to eviscerate the remedial provisions altogether." *Id.*

WHETHER THE TRIAL COURT ERRED WHEN IT CONCLUDED MS. JONES WAS NOT A PARTY FOR PURPOSES OF REQUESTS FOR PRODUCTION

Mr. Flook argues that the trial court erred when it concluded Ms. Jones was not a party to the lawsuit for purposes of responding to his requests for admission.

The trial court granted Mr. Flook additional time to respond to the DOC's motion for judicial review after the DOC objected to his requests for admissions directed to Ms. Jones. The trial court explained to Mr. Flook that Ms. Jones was not listed as a party for purposes of CR 36. Mr. Flook neither objected to the trial court's explanation nor did he file a motion to compel responses from Ms. Jones.

Under RAP 2.5(a), we "may refuse to review any claim of error which was not raised in the trial court." Because Mr. Flook did not preserve this alleged error in the trial court, we decline review.

APPELLATE COSTS AND FEES

Mr. Flook argues that should he prevail on appeal, under RCW 42.56.550(4) and RAP 18.1, he is entitled to fees.

RAP 18.1(a) provides a party the "right to recover reasonable attorney fees or expenses on review" before this court, so long as the party requests the fees and "applicable law" grants the right to recover. Under RCW 42.56.550(4), a person who prevails against an agency in an action under the PRA "shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action."

16

No. 39553-7-III
*Flook v. Dep't of Corr.*

Because Mr. Flook is not the prevailing party in this appeal, he is not entitled to costs and fees on appeal.

We affirm the trial court's finding that the DOC's PRA violation was not in bad faith, affirm the superior court's denial of penalty assessments, and affirm the superior court's conclusion that Ms. Jones was not a party for purposes of requests for admissions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Fearing, J.

Pennell, J.